UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SIERRA NEVADA TRANSPORTATION, INC., <br><br>Plaintiff, <br><br>v. <br><br>NEVADA TRANSPORTATION AUTHORITY, DIVISION OF THE NEVADA DEPARTMENT OF BUSINESS AND INDUSTRY, <br><br>Defendant. | Case No. 3:21-cv-00358-LRH-CLB <br><br>ORDER |

Before the Court is Defendant Nevada Transportation Authority's ("NTA") motion to dismiss Plaintiff Sierra Nevada Transportation, Inc.'s ("SNT") first amended complaint ("FAC") (ECF No. 11). SNT filed a response (ECF No. 15), to which NTA filed a reply (ECF No. 16). For the reasons articulated below, the Court grants the motion.

**I.   BACKGROUND**

This matter involves a dispute between the NTA and SNT regarding the scope of the NTA's jurisdiction to regulate ground transportation within the State of Nevada.

Among other things, the NTA is charged with promoting safe and economic conditions in motor transportation and regulates motor carriers within the State of Nevada. The NTA derives its regulatory authority under Nevada Revised Statutes ("NRS") Chapter 706. Specifically, the NTA may "make necessary and reasonable regulations governing the administration of [Chapter 706]," which includes the licensing and regulation of motor carriers. *See also* NRS 706.171 (general

1

powers of the NTA); NRS 706.758 (advertising requirements of motor carriers); NRS 706.758 (enforcement actions against carriers). Chapter 706 also requires that motor carriers operating within intrastate commerce carry a certificate of public convenience and necessity issued by the NTA. *See* NRS 706.386 (outlining persons required to obtain a certificate to operate within the State of Nevada).

One such motor carrier, SNT, is a California corporation that operates an airport limousine service providing ground transportation by prearranged trips for passengers to and from the Reno-Tahoe International Airport ("RNO") in Reno, Nevada. ECF No. 9 at 3. SNT's primary business consists of three types of bookings: (1) airline crews scheduled through a company in New York; (2) out-of-state business and vacation travelers booked by travel agents and other third-party companies; and (3) trips prearranged and paid for in advance directly by the passenger. *Id.* SNT brings passengers from RNO to a destination in Nevada or, in some instances, Lake Tahoe, California *Id.* at 5. SNT does not operate a public facing taxi service for trips around Reno. *Id.*

Relevant to this matter, on July 15, 2019, the NTA sent a communication to motor carriers, including SNT's predecessor, Lakeshore, that: "ANY [sic] land transportation which begins in Nevada (even if it is at the Airport) and terminates at another location in Nevada (even if THAT [sic] is at the airport) will be considered INTRAstate [sic] transportation (Point to point within Nevada)—subject to citation and the impoundment of the vehicle used for any non-certified carrier." ECF No. 9 at 10.

Disagreeing with the NTA's interpretation of what constituted "intrastate" travel, Lakeshore sought a declaratory order or advisory opinion, pursuant to Nevada Administrative Code ("NAC") § 706.980, finding that its business involved "interstate" travel, as its travelers came from out of state and then were taken to their final destination in Nevada. *Id.* at 11. According to Lakeshore, this meant its services were governed under federal law that preempted any state regulatory regime. *Id.*

Addressing the matter at its July 22, 2020 hearing, the NTA Commissioners voted to deny Lakeshore's request for a declaratory order or advisory opinion. *Id.* at 12. According to the Commissioners, the NTA lacked jurisdiction to interpret federal law. *Id.* Moreover, the NTA

asserted that under NRS Chapter 706, transportation between two points in Nevada is considered "intrastate" rather than "interstate" and is therefore subject to NTA registration, licensing, rate, and other regulatory requirements. *Id.* at 13. Following the Commissioners' decision, the NTA both fined and impounded SNT's vehicles on three separate occasions between July 12, 2020 and July 6, 2021 for not carrying a certificate of public convenience and necessity issued by the NTA. *Id.* at 13–14. Two of these matters are in dispute and ongoing within the administrative appeal process under NRS 233B. *Id.*

SNT now sues for declaratory relief pursuant to 42 U.S.C. § 1983 for a violation of its rights under the Commerce Clause on the basis that the NTA lacked jurisdiction to issue certificates of public convenience because its authority was pre-empted by federal law. Specifically, SNT requests that this Court declare that SNT's transportation business, including transportation wholly within Nevada, is interstate commerce governed by federal law. ECF No. 1 at 16. Furthermore, SNT requests that this Court issue a permanent injunction, prohibiting the NTA from taking any enforcement action of any nature against SNT for conducting its business. *Id.* Lastly, SNT seeks reasonable attorney fees and costs in bringing this action. *Id.*

**II.     LEGAL STANDARD**

A party may seek the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a legally cognizable cause of action. *See* Fed. R. Civ. P. 12(b)(6) (stating that a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted[.]"). To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the notice pleading standard of Federal Rule 8(a)(2). *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) does not require detailed factual allegations; however, a pleading that offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient and fails to meet this broad pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To sufficiently allege a claim under Rule 8(a)(2), viewed within the context of a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the alleged misconduct. *See id.* at 678-679 (stating that "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation marks and citations omitted). Further, in reviewing a motion to dismiss, the court accepts the factual allegations in the complaint as true. *Id.* However, bare assertions in a complaint amounting "to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 698) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

**III.   DISCUSSION**

After reviewing the NTA's motion to dismiss, the Court has identified three chief arguments as to why the FAC must be dismissed: (1) that SNT has failed to exhaust its administrative remedies and the claims are not ripe for judicial review; (2) that the NTA is entitled to section 1983 immunity; and (3) that SNT mischaracterizes the scope of the NTA's jurisdiction under the Commerce Clause. Each of these arguments will be addressed in turn.[1]

---

[1] In its motion to dismiss, the NTA also alleges improper service of the FAC, as well as a time bar under the relevant statute of limitations. Both of these arguments fail. First, as to proper service, four days after the FAC was filed, both the Chairperson of the NTA and the Attorney General of the State of Nevada were served. *See* ECF Nos. 12–13. Service was in accordance with the statutory scheme found under NRS 41.031. Second, a statute of limitations does not apply when a party, as here, seeks prospective relief. *See City of Fernley v. State*, 366 P.3d 699, 707–08 (2016) (holding the same).

4

### A. Administrative Exhaustion and Ripeness

The NTA maintains that, because there exist ongoing controversies between the NTA and SNT regarding the scope of the NTA's jurisdiction, SNT has failed to exhaust its administrative remedies and this matter is not ripe for judicial review. Specifically, the NTA points to administrative proceedings surrounding the citations SNT received on three separate occasions between July 12, 2020 and July 6, 2021 for not carrying a certificate of public convenience.

The ripeness doctrine defines the limits of this Court's jurisdiction to adjudicate certain disputes. *See, e.g.*, *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010) ("Ripeness reflects constitutional considerations that implicate 'Article III limitations on judicial power, as well as prudential reasons for refusing to exercise jurisdiction.'") (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). Ripeness concerns prevent this Court from entangling itself in abstract disagreements by adjudicating disputes too early. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). For example, as a general rule, only "final agency action[s]" are subject to judicial review. *See Dalton v. Specter*, 511 U.S. 462, 469 (1994).

As such, in Nevada, before a party seeks judicial review of an agency's decision, it must first exhaust its administrative remedies; failure to do so deprives this Court of subject matter jurisdiction. *Malceon Tobacco, LLC v. State ex rel. Dep't of Taxation*, 59 P.3d 474, 475–76 (Nev. 2002). Still, exceptions exist to the exhaustion doctrine. First, a court has discretion not to require exhaustion of administrative remedies where the issues relate solely to the interpretation or constitutionality of a statute. *State of Nevada v. Glusman*, 651 P.2d 639, 644 (Nev. 1982). And second, exhaustion is not required when a reliance on administrative remedies would be futile. *See Nevada Dep't of Taxation v. Scotsman Mfg. Co.*, 849 P.2d 317, 319 (Nev. 1993); *Saif Corp./Oregon Ship v. Johnson*, 908 F.2d 1434, 1441 (9th Cir. 1990).

Here, SNT, citing the second exception, maintains that the NTA's position on interstate versus intrastate travel has been settled and any attempt to argue otherwise via administrative processes would be futile. The SNT relies on the comments of the NTA Commissioner Asad who, at the conclusion of the July 22, 2020 hearing, told Lakeshore's counsel that:

> As I said at the beginning of this discussion, we do not have jurisdiction to interpret federal law that may be subject to more than one interpretation. So why don't you go to District Court, ask for a dec [sic] relief action, that will exhaust your administrative remedies, then you take that up to federal court. I mean, I'm not going to tell you how to practice law but that's what I would do.

ECF No. 9 at 12.

Based on this admission, it seems that the NTA Commissioners' position on the issue in question is already set. The NTA Commissioners made clear that the question of whether the NTA has jurisdiction over Lakeshore (and therefore SNT) cannot be determined by the NTA alone as it would require them to interpret federal law. Thus, according to the NTA, even if it had interpreted federal law, not only would the comments have been dicta (because they do not claim to have jurisdiction to conduct such an analysis), but it is likely that it would have reached a result maintaining the status quo and found that Lakeshore's business constituted intrastate travel. Therefore, factual issues surrounding pending administrative proceedings will not change the NTA's legal position at issue in this matter. For these reasons, SNT is not precluded under the exhaustion requirement from raising its claims before this Court.

**B. Section 1983 Immunity**

In its amended complaint, SNT seeks declaratory and injunctive relief against the NTA, as well as reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1983 ("Section 1983"). ECF No. 9 at 17. In its motion to dismiss, the NTA argues that it is entitled to Section 1983 immunity because it is not a "person" as envisioned by the statute. ECF No. 11 at 18. In its opposition to the motion, SNT counters that individuals in their official capacities are appropriately named in Section 1983 claims if the plaintiff seeks prospective declaratory and injunctive relief. ECF No. 15 at 14. With that principle in mind, SNT asks this Court to allow it to amend its complaint to include individuals in their official capacity at the NTA. *Id.* at 15.

Section 1983 is an integral piece to the enforcement of federal constitutional rights. The statute authorizes private parties to sue municipalities, state and local officials, and other defendants who acted under color of state law. *See* 42 U.S.C. § 1983. Notably, Section 1983 authorizes claims for relief only against a "person" who has acted under color of state law. *Id.* Neither a state nor its officials acting in their official capacities are "persons" under Section 1983,

and therefore the statute does not ordinarily provide a cause of action against those entities or individuals. *Will v. Michigan State Police*, 491 U.S. 58, 71 (1989). However, the general rule is subject to one exception: when an individual in their official capacity is sued for prospective declaratory and injunctive relief, the action is properly brought under Section 1983. *Wolfe v. Strankman*, 392 F.3d 358, 365 (9th Cir. 2004); *see also Donrey Media Group v. Ikeda*, 959 F.Supp. 1280 (D. Haw. 1996) ("If the plaintiff asks the federal court to enjoin the official's future unconstitutional conduct, the Eleventh Amendment presents no bar, because unconstitutional actions by state officials cannot be authorized by a state.").

Here, SNT seeks declaratory and injunctive relief against the NTA: a political agency of the State of Nevada, not an individual state official. However, recognizing that it failed to name individuals in their official capacities at the NTA as required by Section 1983, SNT in its response states that, with leave of court "[it] could amend to substitute the Commissioners of the NTA Board as defendants in place of the NTA and proceed forward with its [claims]." ECF No. 15 at 18. Normally the Court would be inclined to grant SNT's request to amend its complaint. However, issues surrounding its substantive legal arguments, as discussed below, caution against granting such a request as it would merely lead to a futile filing. Therefore, because SNT has not raised claims against individuals in their official capacity at the NTA, the Court will dismiss the Section 1983 claims brought against the NTA.

### C. The Commerce Clause and SNT's Motor Carrier Services

The crux of this matter surrounds the relationship between the Commerce Clause and the type of motor carrier services that SNT provides. The first amended complaint states that SNT's business consists of three types of bookings: (1) airline crews scheduled through a company in New York; (2) out-of-state business and vacation travelers booked by travel agents and other third-party companies; and (3) trips prearranged and paid for in advance directly by the passenger. ECF No. 9 at 3. The question before this Court is whether the character of those trips is such that they can be classified as interstate even though they do not cross state lines. If the trips are considered interstate travel as argued by SNT, the NTA may be foreclosed from regulating them under the Commerce Clause.

The Commerce Clause is violated when a state action "unjustifiably…discriminate[s] or burden[s] the interstate flow of articles of commerce." *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013) (quoting *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 98 (1994)). In the local transportation context, the "ultimate test" as to whether the interstate flow of articles of commerce is involved "is whether the local transportation service is an 'integral step in the interstate movement.'" *Mateo v. Auto Rental Co.*, 240. F.2d 831, 833 (9th Cir. 1957) (quoting *United States v. Yellow Cab. Co.*, 332 U.S. 219, 229 (1947), *overruled on other grounds by Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984)).

In answering this question, the Supreme Court in *United States v. Yellow Cab. Co.* examined whether the transportation of passengers between railroad stations in Chicago was considered interstate travel for the purposes of the Sherman Act. 332 U.S. at 228. At that time, passengers making interstate railroad trips through Chicago had to disembark from a train at one railroad station, travel to another railroad station blocks away, and board a different train. *Id.* To mitigate the difficulty of this task for its customers, the railroad companies contracted with a shuttle service to transport passengers and their luggage between railroad stations. *Id.* In evaluating the interstate character of these trips, the Court held that:

> When persons or goods move from a point of origin in one state to a point of destination in another, the fact that a part of that journey consists of transportation by an independent agency solely within the boundaries of one state does not make that portion of the trip any less interstate in character.

*Id.* at 228–29. In reaching this conclusion, the Supreme Court placed special emphasis on the fact that the shuttle service contracted exclusively with the railroad companies and did not provide its services to the general public. *Id.*

In a more modern context, the D.C. Circuit analyzed a similar situation in *Pennsylvania Public Utility Com. v. United States* involving airlines. 812 F.2d 8 (D.C. Cir. 1987). In that case, United Airlines contracted with a transport company to bring its employees from Baltimore Washington Airport to a hotel in Columbia, Maryland, and back again. *Id.* at 9. Normally, federal regulators do not have jurisdiction over "transportation of passengers by motor vehicle incidental to transportation by aircraft." *Id.* at 11–13 (quoting 49 U.S.C. 13506(a)(8)(A)). Nevertheless, the

Court found that the tips constituted interstate travel because there was an "explicit contract" with United Airlines and the transport company to take the airline employees to temporary accommodations before returning them to the airport to resume their interstate journey. *Id.* at 11. Like the Supreme Court in *Yellow Cab*, the D.C. Circuit found it relevant that United Airlines and the transport company had an exclusive arrangement to provide the travel at issue. *Id.*

Another division of this Court reached a similar conclusion in *Brown's Crew Car of Wyoming LLC v. Nevada Transp. Authority*, 2009 U.S. Dist. LEXIS 39469 (D. Nev. 2009). There, the Court evaluated whether a service that transports rail crews only in Nevada at the request of a railroad company constituted interstate commerce. *Id.* at *35. The Court found that because the rail-crew transportation service contracted only with the interstate rail carrier, and all of the services performed for the railroads were an integral part of the operation of the trains' interstate journey, then the services were wholly in interstate commerce. *Id.* The Court also found it material that the rail-crew transport service ensured that the trains operated under the requirements of federal law and union rules. *Id.*

With these legal principles and factual circumstances in mind, this Court finds that some aspects of SNT services constitute interstate travel, and some aspects of its services are intrastate travel. To start with, trips with airline crews scheduled through a company in New York directly involve interstate travel as they implicate federal law and union rules as articulated in the case law above. As a result, the NTA concedes that it will not enforce its laws against SNT's trips that involve flight crews. ECF No. 11 at 12. Despite this concession, according to SNT's first amended complaint, the NTA imposed a $1,000 fine against it based on a trip involving a flight crew that was not in uniform and therefore there was no way for the NTA to know whether the passengers were pilots. ECF No. 9 at 13. However, that assertion, while true for the purposes of this order on the motion to dismiss, ultimately demonstrates the NTA's intent to not enforce its laws against trips clearly shown to involve airline crews. Accordingly, the Court finds that aspect of SNT's business is not implicated for the purposes of this matter.

Still, trips for out-of-state business and vacation travelers booked by travel agents and other third-party companies, and trips prearranged and paid for in advance directly by the passengers

constitute intrastate travel properly regulated by the NTA. The Court reaches this conclusion because neither of these services involve a contract with an interstate transportation provider to accommodate its employees. *See Pennsylvania Public Utility Com.*, 812 F.2d 8 (D.C. Cir. 1987) (airlines); *Brown's Crew Car of Wyoming LLC*, 2009 U.S. Dist. LEXIS 39469 (D. Nev. 2009) (railroad companies). Rather, SNT contracts with these individual travelers to pick them up in Nevada and drop them off in Nevada. And while these transactions may occur across state lines, the purely local use of the actual transportation does not constitute interstate commerce. *See Mateo*, 240 F.2d at 833 (stating that the determination whether plaintiff engaged in commerce "must be guided by practical considerations, not technical conceptions."). Consequently, the Court finds that SNT's transportation services for individuals that are not airlines crews are wholly intrastate and the Court will dismiss this action.

## IV.   CONCLUSION

IT IS THEREFORE ORDERED that the NTA's motion to dismiss (ECF No. 11) is **GRANTED.**

IT IS FURTHER ORDERED that the NTA's earlier motion to dismiss (ECF No. 5) is **DENIED** as moot.

IT IS SO ORDERED.

DATED this 18th day of May, 2022.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE